JEFFREY C. HALLAM (State Bar No. 161259)
E-Mail:      jhallam@sideman.com
ERICA BRAND PORTNOY (State Bar No. 244923)
E-Mail:      eportnoy@sideman.com
ELLEN P. LIU (State Bar No. 280459)
E-Mail:      eliu@sideman.com
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:  (415) 392-1960
Facsimile:   (415) 392-0827

Attorneys for
CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CISCO SYSTEMS, INC., and CISCO TECHNOLOGY, INC., a California corporation,<br><br>          Plaintiffs,<br><br>     v.<br><br>DANNY TSAI, an individual; and DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No. 5:14-CV-00791<br><br>**COMPLAINT FOR:**<br><br>1. **INTENTIONAL MISREPRESENTATION;**<br>2. **CONCEALMENT;**<br>3. **NEGLIGENT MISREPRESENTATION**<br>4. **CONVERSION;**<br>5. **UNFAIR BUSINESS PRACTICES CAL. BUS. & PROF. CODE §§ 17200 *et seq.*;**<br>6. **FEDERAL TRADEMARK INFRINGEMENT 15 U.S.C. § 1114;**<br>7. **COUNTERFEIT OF REGISTERED TRADEMARK 15 U.S.C. § 1114(1)(B);**<br>8. **UNFAIR COMPETITION 15 U.S.C. § 1125(A)(1)(A); and,**<br>9. **CALIFORNIA COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT.**<br><br>**DEMAND FOR JURY TRIAL** |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  Plaintiffs CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC.,

2  allege, aver and complain as follows:

3  **INTRODUCTION**

4  1.  Plaintiffs CISCO SYSTEMS, INC. and CISCO TECHNOLOGY, INC.

5  (collectively, "CISCO" or "Plaintiffs") bring this action to recover actual damages

6  of not less than 2.5 million dollars caused by fraudulent misrepresentations made,

7  and unfair business practices and trademark counterfeiting and infringement

8  committed, by Defendant DANNY TSAI (hereinafter referred to as "TSAI") and

9  DOES 1-50 (collectively "DEFENDANTS").  CISCO seeks restitution and other

10  relief in accordance with applicable law.

11  2.  From 2005 through 2012, DEFENDANTS perpetrated a fraud on

12  CISCO as described more fully below, whereby DEFENDANTS engaged in a

13  pattern and practice of making misrepresentations to secure replacement parts from

14  CISCO through Cisco's service and warranty program.  Based on these repeated

15  misrepresentations, DEFENDANTS received Cisco products at no cost, returned

16  counterfeit products to CISCO, and then, Cisco is informed and believes, sold the

17  genuine Cisco products for a significant profit.  DEFENDANTS concealed their

18  wrongdoing and prevented Cisco from discovering their fraud by returning

19  counterfeit "Cisco" products through Cisco's service and warranty program.

20  CISCO has yet to discover the full extent of the DEFENDANTS' scheme.  Based on

21  further investigation and discovery, CISCO will seek to amend this Complaint to

22  add further allegations and causes of action, as may be appropriate.

23  **JURISDICTION**

24  3.  This Court has original subject matter jurisdiction over this action

25  pursuant to 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121 because this action arises

26  under the laws of the United States, and because it involves allegations regarding

27  trademark violations.  This Court has supplemental jurisdiction under 28 U.S.C. §§

28

2  Case No.  5:14-CV-00791

COMPLAINT

1338(b) and 1367 for all claims in this Complaint that are based upon state law because those claims arise from the same controversy as do the claims being made under federal statute.

4.     This is a complaint for Trademark Counterfeiting and Unfair Competition arising under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1)(a)(Trademark Counterfeiting and Trademark Infringement) and 1125(a) (Unfair Competition and False Description); California Common Law Unfair Competition and Trademark Infringement; Unfair Business Practices (Cal. Bus. & Prof. C. § 17200, et. seq.); and Fraud (Cal. Civ. C. § 1710).

5.     This Court has personal jurisdiction over DEFENDANTS because this action arises from DEFENDANTS' activities that were conducted from locations in the Los Angeles, California area, which is located within the Central District of California.  CISCO alleges on information and belief that DEFENDANTS are either residents of California, or that they are actively conducting business in California, purposefully availing themselves of the benefits and protections of California law.

## VENUE

6.     Venue for this action properly lies in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within that district.

## THE PARTIES

7.     Plaintiff CISCO SYSTEMS, INC. ("CSI") is and was at all relevant times a California Corporation, authorized to do business in all counties within the State of California, with its principal place of business in San Jose, California. Plaintiff CISCO TECHNOLOGY, INC. ("CTI") is, and at all times mentioned herein was, a California corporation, with its principal place of business at 170 W. Tasman Dr., San Jose, California 95134.  CTI owns the trademarks that are used by CISCO in marketing Cisco-branded products.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

8.    CISCO is informed and believes that Defendant TSAI is and was at all relevant times an individual, residing within the County of Riverside, in the State of California.

9.    The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1 through 50, inclusive, are unknown to CISCO which, therefore, sues said Defendants by such fictitious names. CISCO will amend this Complaint to show the true names and capacities of these DOE Defendants when the same shall have been fully and finally ascertained.

10.    CISCO is informed and believes, and thereon alleges, that each of the defendants designated herein as a DOE is legally responsible, in some manner, for the events and happenings herein referred to, and legally caused damages to CISCO as herein alleged.

11.    CISCO is informed and believes, and thereon alleges, that DEFENDANTS are citizens and residents of the State of California, and/or are doing business in the State of California, and/or participated in or undertook obligations or rights arising out of the subject events and happenings herein referred to, engaged in actions or omissions, either intentional or negligent, regarding the subject events and happenings herein referred to, and/or benefited unjustly from the efforts, work and goods of CISCO.

12.    At all times relevant to this action, each Defendant, including those fictitiously named Defendants, was the agent, servant, employee, partner, joint venturer, accomplice, conspirator, alter ego or surety of the other Defendants and was acting within the scope of that agency, employment, partnership, venture, or suretyship with the knowledge and consent or ratification of each of the other Defendants in doing the things alleged in this Complaint.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# FACTUAL ALLEGATIONS

## Cisco Background Facts

13.    Founded in 1984 and headquartered in San Jose, California, CISCO is the worldwide leader in networking equipment for information systems.  CISCO's business also spans various aspects of the telecommunications industry, including telecommunications networking hardware, advanced telecommunications network design, implementation services, high-end videoconferencing technology and data center technology, among others.  CISCO maintains a distribution network through which its products enter the stream of commerce.

14.    CISCO has developed a strong name and reputation within the trade and among members of the consuming public as a leading manufacturer of mission-critical networking and telecommunications systems, and it sells these products worldwide.  CISCO has invested substantial effort and resources to develop and promote public recognition of the CISCO trade name and of the family of Cisco-related marks.  CISCO has used the family of Cisco trademarks to identify goods and services as being genuine CISCO products, and the Cisco marks and name are well-recognized signifiers of CISCO's high quality products and services (the Cisco marks and name are hereinafter referred to as the "Cisco Marks").

15.    CTI has caused several Cisco Marks to be registered on the Principal Register of the U.S. Patent and Trademark Office in connection with a range of telecommunications, computer hardware and software products and services, and CTI owns all rights, title, and interest in numerous federal trademark registrations. The registered Cisco Marks include, but are not limited to, the following:

| Mark | Registration Number | Registration Date |
|---|---|---|
| CISCO | 1,542,339 | June 6, 1989 |
| CISCO SYSTEMS | 1,996,957 | August 27, 1996 |
| CISCO SYSTEMS  and Design | 1,999,660 | September 10, 1996 |
| CISCO SYSTEMS  and Design | 2,116,358 | November 25, 1997 |
| CISCO SYSTEMS  and Design | 2,232,700 | March 16, 1999 |

Case No.  5:14-CV-00791

COMPLAINT

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| CISCO SYSTEMS and Design | 2,488,368 | September 11, 2001 |
|---|---|---|
| CISCO | 2,498,746 | October 16, 2001 |
| CISCO SYSTEMS and Design | 2,552,361 | March 16, 2002 |
| CISCO SYSTEMS and Design | 2,959,329 | June 7, 2005 |
| CISCO and Design | 3,759,451 | March 9, 2010 |
| CISCO | 3,978,294 | June 14, 2011 |
| CISCO | 4,263,591 | December 25, 2012 |

16.    The Cisco Marks are distinctive, having no meaning outside their use by CISCO in its course of business operations and in its advertising to distinguish its products and services.  CISCO uses these marks to advertise through a wide variety of media including television, radio, newspapers, magazines, billboards, direct mail, web sites, and in telephone directories across the country.  As a result, the Cisco Marks have become well known.

17.    Also as a result of CISCO's extensive advertising and promotional efforts and its continuous use of its core Cisco Marks for more than 25 years, CISCO has attained one of the highest levels of brand recognition.  As a result of CISCO's longstanding and widespread use and promotion of the Cisco Marks, CISCO's customers worldwide have come to rely upon the Cisco Marks to identify CISCO's high-quality goods and services.  Many of CISCO's products are purchased by the U.S. Government, the military, and by other industries, in critical and life-essential applications.

18.    Counterfeit CISCO products jeopardize the systems into which they are placed because they do not conform with CISCO's design, specifications, production standards or quality control, and thus lack reliability.  Counterfeit products that bear markings similar to, or substantially indistinguishable from, the Cisco Marks provide customers with a false assurance that the products they have purchased are reliable and conform with CISCO's high standards and that they are eligible for certain warranties.  When counterfeit products fail, the purchasers can suffer critical losses to their business, infrastructure, and security.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

19.     CISCO's product serial numbers allow CISCO to maintain quality control and product traceability for warranty, service and other business purposes. Specifically, a CISCO product serial number is typically married to or associated with a myriad of product related components or attributes, *i.e.* label serial number, motherboard serial number, daughter card serial number, power supply serial number, product ID, sales order number, and package ID number.  If the association between these serial numbers is broken, CISCO's quality control and CISCO's production, warranty, and service standards would be compromised.

20.     CISCO products that have been modified and/or resold outside of CISCO's approved distribution channels are not normally covered by CISCO warranties or by CISCO service contracts, because CISCO cannot attest to their genuineness or condition.  These restrictions also apply to counterfeit products that bear marks similar to, or substantially indistinguishable from, Cisco Marks.

21.     In addition to selling its products, CISCO also sells optional service contracts, known as "SMARTnet" contracts.  Identifying and solving customers' technical problems in a prompt and efficient manner is an important part of CISCO's business model because customers often rely upon CISCO products for mission critical functions.  SMARTnet contracts provide customers with enhanced warranty service on their purchased products on an expedited basis.

22.     On the relatively rare occasions when CISCO parts fail, certain SMARTnet contracts offer customers "Advance Replacement."  As the name suggests, "Advance Replacement" provides customers with replacement parts for a malfunctioning CISCO product in advance of the customer returning the defective product to CISCO.  This helps customers to avoid long periods of downtime to their networks.  The terms and conditions of the SMARTnet contract require, in part, that (1) the product for which advance replacement is sought be validly covered by the SMARTnet contract, and (2) the customer return the allegedly defective product

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

7

Case No.  5:14-CV-00791

1  giving rise to the claim made pursuant to the SMARTnet contract.  The customer

2  must pay CISCO the price of the replacement part if the customer fails to return the

3  failed part for which the claim was made.

4      23.    SMARTnet service requests, which customers may initiate through a

5  CISCO web interface or by phone, are tracked by CISCO through product serial

6  numbers that correspond to the CISCO part that is covered by the SMARTnet

7  contract.  In other words, when SMARTnet customers request service on a CISCO

8  part through CISCO's web interface, they must provide a product serial number

9  before CISCO will service the defective part.

10      24.    Additionally, when a customer initiates a SMARTnet service request,

11  information about the customer is captured, along with the description of the

12  claimed defective product.  Cisco customers are provided with a Cisco Connection

13  Online ("CCO") user identification and password, which allows the customer to

14  easily identify himself to Cisco, and provides the customer a secure means to

15  communicate with Cisco via the internet regarding a reported problem.  The CCO

16  user identification includes a profile, which contains information about the

17  customer's SMARTnet contracts, contact information, and other details.

18  **Defendants Made Repeated Fraudulent Representations To Cisco And**

19  **Obtained Ill-Gotten Profits From Unauthorized Sales Of Cisco Products**

20      25.    Beginning sometime in or about April 2005, and continuing through at

21  least October 2012, DEFENDANTS, and others acting on their behalf, conspired to

22  engage, and engaged in, repeated fraud related to CISCO's SMARTnet program and

23  Advance Replacement feature.  As described in more detail in the following

24  paragraphs, DEFENDANTS repeatedly initiated SMARTnet service requests in

25  which they misrepresented to CISCO that products covered under a Cisco

26  SMARTnet contract had failed, which induced CISCO to send them valuable

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1 replacement products through the Advanced Replacement program, and which

2 CISCO is informed and believes they then re-sold to third parties for profit.

3     26.   DEFENDANTS' fraud was perpetrated through their employment at a

4 number of legitimate companies all located predominantly in the Los Angeles,

5 California area.  These companies included IndyMac Federal Bank/OneWest Bank,

6 Comcast Entertainment Group/NBC Universal, Los Angeles World Airport and

7 Demand Media Inc.  DEFENDANTS used these companies' Cisco SMARTnet

8 contracts to receive replacement Cisco products, which were fraudulently ordered

9 through the Advanced Replacement program by DEFENDANTS.  These companies

10 did not use the replacement Cisco equipment that was sent to them and registered in

11 their names.   Rather, DEFENDANTS used these companies and the Cisco

12 SMARTnet contracts they owned to fraudulently obtain CISCO parts at no cost and,

13 CISCO is informed and believes, to immediately re-sell them for their own personal

14 profit.

15     27.   CISCO is informed and believes that between September 2004 and

16 March 2007, TSAI was employed by IndyMac Federal Bank in Pasadena, California

17 as a Senior Network Engineer.  IndyMac Federal Bank is the owner of several

18 SMARTnet contracts, including Cisco SMARTnet contract numbers 90574410,

19 3585560, 3300774, 3193516, 2157053, 2186758, 2293864, 2393322, 2406401,

20 3175292.

21     28.   CISCO is informed and believes that between April 2010 and June

22 2012, TSAI was employed by Comcast Entertainment Group/NBC Universal in Los

23 Angeles, California.  Comcast Entertainment Group/NBC Universal and its

24 affiliates, including but not limited to E! Entertainment Television and Golf

25 Channel, are the owners of several SMARTnet contracts, including Cisco

26 SMARTnet contract numbers 90650080, 90650081, 3452914, 1009725.

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

29.   CISCO is informed and believes that between February 2012 and at least March 2012, TSAI was employed by Los Angeles World Airports in Los Angeles, California.  Los Angeles World Airports is the owner of several SMARTnet contracts, including Cisco SMARTnet contract number 90348994.

30.   CISCO is informed and believes that between September 2012 and at least December 2012, TSAI was employed by Demand Media Inc. in Santa Monica, California in the position of Director Network Engineering.  Demand Media, Inc. and its affiliates, including but not limited to eNom, are the owners of several SMARTnet contracts, including Cisco SMARTnet contract numbers 91892299 and 9133245, among others.

## Examples Of The Fraudulent And Infringing Activity

31.   By way of example, using Cisco SMARTnet contracts owned by Comcast Entertainment Group/ NBC Universal ("Comcast"), DEFENDANTS made multiple false SMARTnet service requests through CISCO's website.  Specifically, on June 8, 2010, using COO user identification "autobot130" associated with user Danny Tsai and the email address dtsai@comcastnets.com, DEFENDANTS falsely and fraudulently represented to CISCO through Service Request number ("SR#") 614582159 and SMARTnet contract number 3452914 (on behalf of E! Entertainment Television) that two Cisco NPE-G1 products (list price of $15,000 each) needed replacement through the Advanced Replacement program.  On June 8, 2010 at 10:54 A.M., "Autobot130" wrote, "Power cycle occured [sic] on chassis in remote facility.  Remote hands from 3rd party vendor was used to troubleshoot from console.  They report that the console output is not displaying any text in the terminal. I suspect the NPEG1 module has gone bad.  The hardware was in service for several years without issues."  Thereafter at 11:10 A.M., "Autobot130" claimed, "The problem occurred when I attempted to upgrade service provider IOS code a few days ago, this chassis has been down for some time....Right now the system is non-operational."  On or

about June 15, 2010 at 5:47 A.M, CISCO issued a Return Material Authorization ("RMA") (RMA #83344867), pursuant to which it authorized the shipment of replacement parts to DEFENDANTS. DEFENDANTS' representations were false. None of these products were in need of service or replacement. Instead, DEFENDANTS sought Cisco products not for their own use but, CISCO is informed and believes, to sell to third parties for profit. DEFENDANTS were aware of the falsity of their representations and made these representations with the intent to cause CISCO to rely on them and to deceive CISCO and to induce CISCO to send DEFENDANTS replacement parts.

32. CISCO reasonably relied on DEFENDANTS' misrepresentations, and acting on that reliance, CISCO, in fact, did send two replacement Cisco NPE-G1 products (with product serial numbers 36978576 and 35987770) on June 15, 2010 to E! Entertainment Television, 5750 Wilshire Blvd., Los Angeles, California, 90036. The value of the products shipped is $26,397. But for DEFENDANTS' representations, CISCO would not have sent these replacement products, to which DEFENDANTS were not entitled, to DEFENDANTS.

33. On July 21, 2010, CISCO received a customer return for this RMA, which appeared to contain two Cisco NPE-G1 products (with product serial numbers SAL35343692 and SAL72974893). A Cisco engineer later examined these products and determined that those returned products are counterfeit. These counterfeit parts and/or their packaging contained markings that appeared indistinguishable from Cisco trademarks that are registered with the U.S. Patent and Trademark Office ("USPTO").

34. On November 27, 2012, Comcast contacted CISCO and confirmed, through a diagnostic query, that the replacement serialized products CISCO sent to Comcast on June 15, 2010 do not reside in its network.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

11

Case No. 5:14-CV-00791

35.   In another example, on May 18, 2010, using COO user identification "autobot130" associated with user Danny Tsai and the email address dtsai@comcastnets.com, DEFENDANTS falsely and fraudulently represented to CISCO through SR# 614423781 and SMARTnet contract number 3452914 (on behalf of E! Entertainment Television) that five Cisco products, a WS-SUP720-3BXL (list price of $40,000), a WS-X6704-10GE (list price of $20,000), two WS-X6724-SFP (list price of $15,000), and a WS-X6748-GE-TX (list price of $15,000), needed replacement through the Advanced Replacement program.  On May 19, 2010 at 1:17 A.M., "Autobot130" claimed: "Receiving the following errors on the C6509 chassis.  The chassis has already been replaced once 30 days ago.  Also one of the WS-X6748-GE-TX linecards has also been recently replaced as well.  But problem still persists.  Need further assistance into troubleshooting."  Thereafter on June 25, 2010 at 9:33 A.M., "Autobot130" wrote: "Reseating modules as sent in previous email did not resolve. I am still receiving the following errors. . .  I would of preferred that there was HW replacement on hand that may have resolved this in one single maintenance window."  On or about June 29, 2010 at 9:33 A.M, CISCO issued a RMA #83367167, pursuant to which it authorized the shipment of replacement parts to DEFENDANTS.  DEFENDANTS' representations were false.  None of these products were in need of service or replacement.  Instead, DEFENDANTS sought Cisco products not for their own use but, CISCO is informed and believes, to sell to third parties for profit.  DEFENDANTS were aware of the falsity of their representations and made these representations with the intent to cause CISCO to rely on them and to deceive CISCO and to induce CISCO to send DEFENDANTS replacement parts.

36.   CISCO reasonably relied on DEFENDANTS' misrepresentations, and acting on that reliance, CISCO, in fact, did send the following replacement Cisco products:  WS-SUP720-3BXL (with product serial number SAD082800NA), WS-

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  X6704-10GE (with product serial number SAL1206FBZN), two WS-X6724-SFP

2  (with product serial numbers SAD091500LE and SAL1312M2YY), and a

3  WS-X6748-GE-TX (with product serial number SAL1413E024) on June 29, 2010

4  to Comcast Cable Communications, 5750 Wilshire Blvd., Los Angeles, California,

5  90036.  The value of the products shipped is $84,230.  But for DEFENDANTS'

6  representations, CISCO would not have sent these replacement products, to which

7  DEFENDANTS were not entitled, to DEFENDANTS.

8      37.    On July 29, 2010 and August 6, 2010, CISCO received customer returns

9  for this RMA, which appeared to contain one Cisco WS-SUP720-3BXL product

10  (labeled with serial number SAL10381YSA), one Cisco WS-X6704-10GE product

11  (labeled with serial number SAL1210HU1Q), two Cisco WS-X6724-SFP products

12  (labeled with serial numbers SAL1212JNNW and  SAL1211JFD4), and one Cisco

13  WS-X6748-GE-TX product (labeled with serial number SAL12405QCG).  A Cisco

14  engineer later examined these products and determined that those returned products

15  are counterfeit in that the serial numbers and part numbers have been materially

16  altered and modified without CISCO's permission.

17      38.    On November 27, 2012, Comcast contacted CISCO and confirmed,

18  through a diagnostic query, that the replacement serialized products CISCO sent to

19  Comcast on June 29, 2010 do not reside in its network.

20      39.    As an additional example, DEFENDANTS, using Cisco SMARTnet

21  contracts owned by IndyMac Federal Bank/OneWest Bank ("IndyMac"), made

22  multiple false SMARTnet service claims through CISCO's website.   Specifically,

23  on October 29, 2008, using COO user identification "autobot130" associated with

24  user Danny Tsai and the email address dtsai@mac.com, DEFENDANTS falsely and

25  fraudulently misrepresented to CISCO through SR# 609927421 and SMARTnet

26  contract number 3193516 (on behalf of IndyMac Bank) that two Cisco WS-X6748-

27  GE-TX products (list price of $15,000 each) needed replacement through the

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Advanced Replacement program.  On June 29, 2008 at 8:36 A.M., "Autobot130" claimed: "Upon bootup of the 6500 switch, the error below started appearing on startup.  Checking 'show module' status shows that the module is offline due to power failure.  The module used to work in the past.  Local facility power outage may have triggered this problem as it did not occur prior to a power shutdown.  Requesting RMA, appears to have failed components."  On or about October 31, 2008 at 4:35 A.M, CISCO issued a RMA #82542911, pursuant to which it authorized the shipment of replacement parts to DEFENDANTS.  DEFENDANTS' representations were false.  None of these products were in need of service or replacement.  Instead, DEFENDANTS sought Cisco products not for their own use but, CISCO is informed and believes, to sell to third parties for profit.  DEFENDANTS were aware of the falsity of their representations and made these representations with the intent to cause CISCO to rely on them and to deceive CISCO and to induce CISCO to send DEFENDANTS replacement parts.

40.    CISCO reasonably relied on DEFENDANTS' misrepresentations, and acting on that reliance, CISCO, in fact, did send two Cisco WS-X6748-GE-TX replacement products (bearing serial numbers SAD09110A9P and SAL1003ASB0) on October 31 2008, to IndyMac Bank, 155 N Lake Ave 7th Floor, Pasadena, CA 91101.  The value of the products shipped is $23,076.  But for DEFENDANTS' representations, CISCO would not have sent these replacement products, to which DEFENDANTS were not entitled, to DEFENDANTS.

41.    On December 23, 2008, CISCO received a customer return for this RMA, which appeared to contain a Cisco WS-X6748-GE-TX part bearing serial number SAL09148TEB.  However, on July 5, 2005, over three years earlier, a new Cisco product WS-X6748-GE-TX bearing serial number SAL09148TEB was shipped on an RMA to the University of Mississippi.  From 2006 through 2008, the University opened multiple SMARTnet service requests referencing this product's

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

serial number.  And from 2009 through 2011, after DEFENDANTS claimed to have returned a part bearing serial number SAL09148TEB, the University opened multiple SR's referencing this same serial number.  On December 19, 2011, CISCO contacted the University regarding this product.  The University confirmed, through a diagnostic query, that this serialized product resides in its network. DEFENDANTS' representations were false.  None of these products were in need of service or replacement.  Instead, DEFENDANTS sought Cisco products not for their own use but, CISCO is informed and believes, to sell to third parties for profit. DEFENDANTS were aware of the falsity of their representations and made these representations with the intent to cause CISCO to rely on them and to deceive CISCO and to induce CISCO to send DEFENDANTS replacement parts.

42.     In another example, using Cisco SMARTnet contracts owned by Los Angeles World Airports ("LAWA"), DEFENDANTS made multiple false SMARTnet service claims through CISCO's website.   Specifically, on February 29, 2012, using COO user identification dtsai@lawa.org associated with user Danny Tsai, DEFENDANTS falsely and fraudulently represented to CISCO through SR # 620871203 and SMARTnet contract number 90348994 (on behalf of LAWA) that a Cisco WS-X6708-10G-3C product (list price of $37,500) needed replacement through the Advanced Replacement program.  On February 29, 2012 at 3:48 A.M., COO user ID dtsai@lawa.org claimed: "Receiving the following error message in syslog on one of the 8-port 10G linecards of c6513. Specifically on 10Gig port 7.  I have reseated the X2 optic and tried different Cisco brand X2 optics.  Tested with X2-10GB-SR, and X2-10GB-LR, and X2-10GB-LX4.  No luck getting this working."  On or about February 29, 2012 at 6:41 A.M, CISCO issued a RMA #84308305, pursuant to which it authorized the shipment of replacement parts to DEFENDANTS.  DEFENDANTS' representations were false.  None of these products were in need of service or replacement.  Instead, DEFENDANTS sought

15                    Case No.  5:14-CV-00791

COMPLAINT

Cisco products not for their own use but, CISCO is informed and believes, to sell to third parties for profit. DEFENDANTS were aware of the falsity of their representations and made these representations with the intent to cause CISCO to rely on them and to deceive CISCO and to induce CISCO to send DEFENDANTS replacement parts.

43. CISCO reasonably relied on DEFENDANTS' misrepresentations, and acting on that reliance, CISCO, in fact, did send a replacement Cisco WS-X6708-10G-3C product (with product serial number SAL1231ZBA8) on February 29, 2012 to Los Angeles World Airports, 6053 W. Century Blvd., Suite 200, Los Angeles, California, 90054. The value of the products shipped is $28,175. But for DEFENDANTS' representations, CISCO would not have sent these replacement products, to which DEFENDANTS were not entitled, to DEFENDANTS.

44. On March 12, 2012, Cisco received a customer return for this RMA, which appeared to contain a Cisco WS-X6708-10GE product (with product serial number SAL1339ZHFU). A Cisco engineer later examined this product and determined that the returned product is counterfeit in that the serial numbers and part numbers have been materially altered and parts of the product have been replaced with non-Cisco parts without CISCO's permission.

45. In another example, using Cisco SMARTnet contracts owned by Demand Media Inc., DEFENDANTS made multiple false SMARTnet service claims through CISCO's website. Specifically, on August 16, 2012, using COO User dtsai@demandmedia.com, associated with user Danny Tsai, DEFENDANTS falsely and fraudulently represented to CISCO through SR# 622801577 and SMARTnet contract number 91892299 (on behalf of Demand Media Inc.) that a Cisco WS-SUP720-3BXL product (list price of $40,000) needed replacement through the Advanced Replacement program. On August 16, 2012 at 12:04 A.M., COO User dtsai@demandmedia.com claimed: "Receiving the following error on

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

supervisor.  Please see below.  I have received this error and the module is rebooting on its own every 2-3 minutes after completing the boot-up process.  I've attempted to retrieve the crash logs but it is constantly rebooting on its own.  This was the standby module in a redundant chassis and was working for several months until recently."  On or around August 21, 2012 at 6:14 A.M., CISCO issued a RMA #84611324, pursuant to which it authorized the shipment of replacement Cisco parts to DEFENDANTS.  DEFENDANTS' representations were false.  None of these products were in need of service or replacement.  Instead, DEFENDANTS sought Cisco products not for their own use but, CISCO is informed and believes, to sell to third parties for profit.  DEFENDANTS were aware of the falsity of their representations and made these representations with the intent to cause CISCO to rely on them and to deceive CISCO and to induce CISCO to send DEFENDANTS replacement parts.

46.    CISCO reasonably relied on DEFENDANTS' misrepresentations, and acting on that reliance, CISCO, in fact, did send a replacement Cisco WS-SUP720-3BXL product (with product serial number SAL1629HBAJ) on August 21, 2012 to Demand Media, 1299 Ocean Ave., Suite 500, Santa Monica, California 90401.   The value of the products shipped is $40,000.  But for DEFENDANTS' representations, CISCO would not have sent these replacement products, to which DEFENDANTS were not entitled, to DEFENDANTS.

47.    On or about March 12, 2012, Cisco received a customer return for this RMA, which appeared to contain a Cisco WS-SUP720-3BXL product (with product serial number SAL1415F61A).  A Cisco engineer later examined this product and determined that the returned product is counterfeit in that the serial numbers and part numbers have been materially altered and parts of the product have been replaced with non-Cisco parts without CISCO's permission.

48.    From approximately April 2005 through October 2012, DEFENDANTS made approximately 156 SMARTnet service requests, in many instances using the same SMARTnet contract number.

49.    Further, Cisco products sent to DEFENDANTS as replacement products as a result of SMARTnet service requests have been located with other end users shortly after they were shipped to DEFENDANTS.  Such activity further demonstrates the intention of DEFENDANTS to use SMARTnet service requests not as a legitimate way to obtain a replacement product for a malfunctioning product, but rather to obtain fraudulently an expensive Cisco part, under false pretenses, at no cost, for immediate re-sale.  Examples of instances of Cisco products sent to DEFENDANTS ending up with third parties are as follows:

a)  In December 2010, a company in Virginia sought service for a Cisco WS-X6748-GE-TX switch (serial number SAD120306EX) under a SMARTnet contract.  The company provided a diagnostic output "show module" readout to the Cisco technician, indicating the product was actually in use in their network.  According to Cisco's records, that product had been shipped on April 26, 2010 to Comcast at E! Entertainment Television, 5750 Wilshire Blvd., Los Angeles, California, 90036, as a result of a SMARTnet service request made by DEFENDANTS on April 16, 2010.  In August 2011, CISCO confirmed that this serialized part was present and running in the Virginia company's network.

b)  A company in Texas registered two Cisco WS-SUP720-3BXL parts (serial numbers SAL135278NY and SAD110400BN) under a SMARTnet contract on February 11, 2011 and July 17, 2010 respectively.  That product had been shipped on July 2, 2010 to Comcast Entertainment Group, 5750 Wilshire Blvd., Los Angeles, California, 90036, as a result of a SMARTnet service request made by DEFENDANTS on June 25, 2010.  In December 2011, CISCO confirmed that these serialized parts were present and running in the Texas company's network.

50.    After submitting SMARTnet service requests and receiving replacement CISCO products, DEFENDANTS returned counterfeit products instead of the claimed defective products in a deliberate (and for awhile successful) attempt to conceal their scheme.

**Loss to Cisco Related to Defendants' Fraud Scheme**

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

51.   The Global List Price ("GLP") for the Cisco products delivered to DEFENDANTS related to this scheme is at least $2,547,164.

## FIRST CAUSE OF ACTION
### Intentional Misrepresentation
### (Cal. Civ. Code §§ 1709, 1710(1))

52.   CISCO incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

53.   Beginning sometime in or about April 2005, and continuing through at least October 2012, DEFENDANTS, and others acting on their behalf, conspired to, and repeatedly initiated, SMARTnet service requests in which they misrepresented to CISCO that products covered under a Cisco SMARTnet contract had failed, which induced CISCO to send them valuable replacement products through the Advanced Replacement program, and which CISCO is informed and believes they then re-sold to third parties for profit.

54.   DEFENDANTS' representations identified herein regarding malfunctioning Cisco parts, which induced CISCO to send DEFENDANTS working Cisco parts, were false.  CISCO is informed and believes, and thereon alleges, that the Cisco products that DEFENDANTS claimed were defective when making SMARTnet service requests to receive replacement Cisco parts were not in fact defective.  Rather, DEFENDANTS made such representations in order to acquire Cisco parts that they could then re-sell for profit.

55.   The examples of DEFENDANTS' fraud scheme, described above, demonstrate how DEFENDANTS' fraud was perpetrated through their employment at a number of legitimate companies, including IndyMac Federal Bank/OneWest Bank, Comcast Entertainment Group/NBC Universal, Los Angeles World Airport and Demand Media Inc.  DEFENDANTS used these companies' Cisco SMARTnet contracts to receive replacement Cisco products, which were fraudulently ordered through the Advanced Replacement program by DEFENDANTS.  These companies

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

19

Case No.  5:14-CV-00791

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    did not use the replacement Cisco equipment that was sent to them and registered in

2    their names.  Rather, DEFENDANTS used these companies and the Cisco

3    SMARTnet contracts they owned to fraudulently obtain Cisco parts at no cost and,

4    CISCO is informed and believes, to immediately re-sell them.

5         56.    The conduct described in this Complaint, including the three

6    immediately preceding paragraphs, constituted misrepresentations of presently

7    existing fact.  CISCO reasonably and justifiably relied on those misrepresentations

8    and thereby was induced to ship working replacement parts to DEFENDANTS.

9         57.    DEFENDANTS' representations were false.  Upon information and

10   belief, none of these products were in need of service or replacement and none of

11   the genuine products were in DEFENDANTS' possession.  Instead, DEFENDANTS

12   sought Cisco products not for their own use but, CISCO is informed and believes, to

13   sell to third parties for profit.  DEFENDANTS were aware of the falsity of their

14   representations and made these representations with the intent to cause CISCO to

15   rely on them and to deceive CISCO and to induce CISCO to send DEFENDANTS

16   replacement parts.  DEFENDANTS concealed their wrongdoing by returning

17   counterfeit "Cisco" products to CISCO instead of the claimed defective Cisco

18   products.

19        58.    CISCO reasonably relied on DEFENDANTS' misrepresentations, and

20   acting on that reliance, CISCO, in fact, sent replacement products.  But for

21   DEFENDANTS' representations, CISCO would not have sent these replacement

22   products, to which DEFENDANTS were not entitled, to DEFENDANTS. As a

23   direct and proximate result of DEFENDANTS' fraudulent conduct as alleged

24   herein, CISCO was induced to provide, and did in fact provide, replacement Cisco

25   product to DEFENDANTS, and thereby lost valuable products that were shipped to

26   DEFENDANTS, but which did not rightfully belong to DEFENDANTS.  But for

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   DEFENDANTS' representations, CISCO would not have shipped any working parts

2   to DEFENDANTS pursuant to DEFENDANTS' SMARTnet service requests.

3       59.   DEFENDANTS conspired to commit the acts described in this First

4   Cause of Action, in that all of these DEFENDANTS acted together with a common

5   purpose to fraudulently procure products through the Advance Replacement

6   program from CISCO through exploitation of SMARTnet contracts.

7   DEFENDANTS were each aware of the common plan to obtain products from

8   CISCO by committing these acts.  Further, DEFENDANTS agreed to commit these

9   acts and intended that these acts should be committed.  DEFENDANTS cooperated,

10  or agreed to cooperate, in committing these acts, so that their scheme to fraudulently

11  obtain Cisco products through the Advance Replacement program could be ongoing.

12  DEFENDANTS committed overt acts in furtherance of this conspiracy until, at

13  least, October 2012.

14      60.   As a direct and proximate result of DEFENDANTS' fraudulent conduct

15  as alleged herein, CISCO has been damaged in the approximate amount of at least

16  $2,547,164.

17      61.   The aforementioned fraudulent representations and conduct by

18  DEFENDANTS were culpable, willful, wanton, malicious, oppressive,

19  demonstrated such want of care and indifference to consequences, and were

20  undertaken with the intent to deceive, so as to justify an award of exemplary and

21  punitive damages to CISCO.

22                 **SECOND CAUSE OF ACTION**
                   **Concealment**

23          **(Cal. Civ. Code §§ 1709, 1710(3))**

24      62.   CISCO incorporates the preceding paragraphs of this Complaint as if

25  fully set forth herein.

26      63.   At all times during which the allegations described within this Second

27  Cause of Action occurred, DEFENDANTS were obligated to report accurately and

28

1  truthfully to CISCO facts regarding products for which DEFENDANTS were

2  seeking replacement parts under SMARTnet contracts.

3     64.    From approximately April 2005 through October 2012, DEFENDANTS

4  made approximately 156 SMARTnet service requests, in many instances using the

5  same SMARTnet contract number.  TSAI conspired with other DEFENDANTS to

6  conceal facts from CISCO about the truth of the condition of the products under the

7  SMARTnet contracts and the subsequent SMARTnet service requests.

8     65.    DEFENDANTS' representations regarding the SMARTnet service

9  requests discussed above were false.  DEFENDANTS actively concealed from

10  CISCO important facts, including but not limited to, that none of these products

11  were in need of service or replacement and that DEFENDANTS did not possess the

12  genuine products.  Instead, DEFENDANTS sought CISCO products not for their

13  own use but, Cisco is informed and believes, to sell to third parties for profit.

14     66.    DEFENDANTS were aware of the falsity of their representations and

15  made these representations with the intent to cause CISCO to rely on them and to

16  deceive CISCO and to induce CISCO to send DEFENDANTS replacement parts.

17  DEFENDANTS concealed their wrongdoing by returning counterfeit "Cisco"

18  products instead of the claimed defective Cisco products.

19     67.    CISCO reasonably relied on DEFENDANTS' representations, and

20  acting on that reliance, CISCO, in fact, did send replacement products to

21  DEFENDANTS.  But for DEFENDANTS' representations and concealment of the

22  truth, CISCO would not have sent these replacement products, to which

23  DEFENDANTS were not entitled, to DEFENDANTS.

24     68.    As a direct and proximate result of DEFENDANTS' concealment as

25  herein alleged, CISCO has lost valuable products that were shipped to

26  DEFENDANTS, but which did not rightfully belong to DEFENDANTS.  But for

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   DEFENDANTS' concealment, CISCO would not have shipped any working parts to

2   DEFENDANTS pursuant to DEFENDANTS' SMARTnet service requests.

3       69.    The aforementioned fraudulent representations and conduct by the

4   DEFENDANTS were culpable, willful, wanton, malicious, oppressive,

5   demonstrated such want of care and indifference to consequences, and were

6   undertaken with the intent to deceive, so as to justify an award of exemplary and

7   punitive damages to CISCO.

8                      **THIRD CAUSE OF ACTION**
                       **Negligent Misrepresentation**
9                    **(Cal. Civ. Code §§ 1709, 1710(2))**

10      70.    CISCO incorporates the preceding paragraphs of this Complaint as if

11  fully set forth herein.

12      71.    The representations made by DEFENDANTS to CISCO in which they

13  claimed through the SMARTnet program that certain Cisco parts were purportedly

14  malfunctioning and in need of replacement were false.

15      72.    DEFENDANTS had no reasonable grounds for believing that the

16  representations to CISCO, alleged herein, in which they claimed through the

17  SMARTnet program that certain CISCO parts were purportedly and in need of

18  replacement were true, in that DEFENDANTS knew that the parts for which they

19  were making SMARTnet service requests were functioning properly and not in need

20  of replacement.

21      73.    DEFENDANTS made the representations with the intent to induce

22  CISCO to send them Cisco parts, to which they were not entitled, in order to sell

23  such Cisco parts to third parties for a profit.

24      74.    CISCO, at the time these misrepresentations were made by

25  DEFENDANTS, and at the time CISCO took the actions alleged herein, was

26  ignorant of the falsity of the representations and believed them to be true.  In

27

28

1   reasonable reliance on DEFENDANTS' representations, CISCO was induced to

2   send, and did in fact send, Cisco products to DEFENDANTS.

3        75.   As a proximate result of DEFENDANTS' fraudulent and/or negligent

4   conduct, CISCO has lost valuable products that were shipped to DEFENDANTS,

5   but which did not rightfully belong to DEFENDANTS.  But for DEFENDANTS'

6   negligent conduct, CISCO would not have shipped any working parts to

7   DEFENDANTS pursuant to DEFENDANTS' SMARTnet service requests.

8        76.   As a direct and proximate result of DEFENDANTS' fraudulent conduct

9   as herein alleged, CISCO was induced to provide, and did in fact provide, working

10  replacement product to DEFENDANTS such that DEFENDANTS obtained

11  products at no cost to them, and CISCO, therefore, has been damaged by at least that

12  amount.

13              **FOURTH CAUSE OF ACTION**
                **Conversion**
14              **(Common Law)**

15       77.   CISCO incorporates the preceding paragraphs of this Complaint as if

16  fully set forth herein.

17       78.   Between April 2005 and October 2012, DEFENDANTS intentionally

18  took possession of at least 154 Cisco parts by wrongful acts, as described herein.  As

19  a result of DEFENDANTS' wrongful acts, CISCO did not consent to

20  DEFENDANTS' possession of these parts.  DEFENDANTS fraudulently concealed

21  these acts in a manner that prevented CISCO from discovering them until CISCO

22  discovered the parts DEFENDANTS returned were counterfeit and that

23  DEFENDANTS did not have the right to take possession of the replacement

24  products.

25       79.   As a proximate result of DEFENDANTS' conversion, CISCO has lost

26  valuable products that were shipped to DEFENDANTS, but which did not rightfully

27  belong to DEFENDANTS.  But for DEFENDANTS' conversion, CISCO would not

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

24                    Case No.  5:14-CV-00791

1  have shipped any working parts to DEFENDANTS pursuant to DEFENDANTS'

2  SMARTnet service requests.

3    80.   But for DEFENDANTS' acts of conversion, CISCO would have

4  maintained control of their products and would have profited from the sale of them,

5  or otherwise derived value from possessing them.

6    81.   DEFENDANTS' actions have caused and, unless restrained by this

7  Court, will continue to cause irreparable injury to CISCO.

8                  **FIFTH CAUSE OF ACTION**
                   **Unfair Business Practices,**
9            **(Cal. Bus. & Prof. Code § 17200 et seq.)**

10    82.   CISCO incorporates the preceding paragraphs of this Complaint as if

11  fully set forth herein.

12    83.   California Business and Professions Code § 17200, et seq., prohibits

13  acts of unfair competition, which means any "unlawful, unfair, or fraudulent

14  business act or practice."

15    84.   In pursuing the above-described schemes, DEFENDANTS have

16  engaged in unlawful business acts or practices by committing the above described

17  acts, including false representation, conversion, trademark infringement and the

18  other acts and practices alleged herein, in an effort to gain an unfair competitive

19  advantage and a windfall in the marketplace.

20    85.   CISCO alleges upon information and belief that DEFENDANTS have

21  continuously misrepresented facts related to claims of defective products in order to

22  obtain Cisco products, and then to sell those fraudulently obtained products.

23    86.   DEFENDANTS' practices were unlawful, unfair, and/or fraudulent, and

24  constitute unlawful, unfair, and/or fraudulent competition as defined by Cal. Bus. &

25  Prof. C. § 17200, et seq.

26    87.   CISCO seeks full restitution by DEFENDANTS necessary and

27  according to proof to restore any and all property and monies, including interest,

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  acquired by Defendants, and all costs incurred by CISCO as a result of

2  DEFENDANTS' unfair business practices.

3  88.  DEFENDANTS' actions have caused and, unless restrained by this

4  Court, will continue to cause irreparable injury to CISCO.

5  89.  CISCO has no other adequate remedy at law for DEFENDANTS' unfair

6  competition and business practices.

### SIXTH CAUSE OF ACTION
#### (Federal Trademark Infringement
#### 15 U.S.C. § 1114)

9  90.  CISCO incorporates the preceding paragraphs of this Complaint as if

10  fully set forth herein.

11  91.  DEFENDANTS have used in commerce, without authorization,

12  CISCO's registered marks, in connection with the exchange and distribution of

13  computer networking and telecommunications equipment, in a manner that is likely

14  to cause confusion, mistake, or to deceive.  DEFENDANTS acted without authority

15  in using these Cisco Marks.

16  92.  DEFENDANTS' unauthorized use of CISCO's Marks falsely represents

17  DEFENDANTS' counterfeit products as emanating from or being authorized by

18  CISCO, and places beyond CISCO's control the quality of products bearing Cisco

19  Marks.

20  93.  The DEFENDANTS' unauthorized use of CISCO's federally registered

21  marks and/or imitations thereof is likely to cause, and has in fact caused, confusion,

22  and the public is likely to believe that CISCO approved of DEFENDANTS as a

23  distributor of CISCO goods.  Furthermore, the public is likely to believe that CISCO

24  maintained control of the goods.

25  94.  DEFENDANTS' infringing actions were committed fraudulently,

26  willfully, and in bad faith, with knowledge of CISCO's exclusive rights to and

27

28

1 goodwill in the Cisco Marks, or with willful blindness to the same, and with the

2 intent to cause confusion, to cause mistake and/or to deceive.

3     95.   As a result of the DEFENDANTS' trademark infringement, CISCO has

4 suffered and will continue to suffer substantial and irreparable injury, loss, and

5 damages to its right in and to the Cisco Marks, and the goodwill associated

6 therewith, for which they have no adequate remedy at law.

7     96.   Due to the acts of the DEFENDANTS, CISCO has suffered and will

8 continue to suffer loss of income, profits, and valuable business opportunities, and,

9 if not restrained, DEFENDANTS will have unfairly derived and will continue to

10 unfairly derive income, profits and business opportunities as a result of its acts of

11 infringement.

12     97.   As the acts alleged herein constitute infringement of the Cisco Marks

13 under 15 U.S.C. § 1114, and as CISCO has no adequate remedy at law, CISCO is

14 entitled to injunctive relief as well as to monetary damages and other remedies as

15 provided by 15 U.S.C. §§ 1116, 1117, and 1118, including treble damages,

16 reasonable attorney's fees and prejudgment interest, and/or statutory damages

17 provided by 15 U.S.C. § 1125.

**SEVENTH CAUSE OF ACTION**
**(Counterfeit of Registered Trademark**
**15 U.S.C. § 1114)**

20     98.   CISCO incorporates the preceding paragraphs of this Complaint as if

21 fully set forth herein.

22     99.   CISCO is informed and believes, and on that basis alleges, that

23 DEFENDANTS  distributed goods or services that bore marks that are non-genuine,

24 which are identical with, or substantially indistinguishable from, CISCO's registered

25 Cisco Marks.

26     100.  The alterations on DEFENDANTS' counterfeit "Cisco" products are

27 likely to confuse the public to believe that CISCO authorized the counterfeit

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

27

Case No.  5:14-CV-00791

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  products.  As such, the alterations  on DEFENDANTS' counterfeit "Cisco" products

2  render them materially different from Cisco's products authorized for sale in the

3  U.S.

4      101.  Cisco Marks are registered on the Principal Register of the U.S. Patent

5  and Trademark Office for the same goods or services in connection with those

6  goods or services offered by DEFENDANTS.

7      102.  DEFENDANTS are not, and have never been, authorized by CISCO to

8  use Cisco Marks on or in connection with the goods or services DEFENDANTS

9  have distributed.

10     103.  DEFENDANTS have therefore used a counterfeit mark, as defined

11 under 15 U.S.C. § 1116(d) and/or 15 U.S.C. § 1127, in connection with the sale,

12 offering for sale, or distribution of goods or services in violation of 15 U.S.C. §

13 1114(1).

14     104.  DEFENDANTS' use of counterfeit Cisco Marks results in substantial

15 injury, loss, property damage, and damages to CISCO's rights in and to Cisco

16 Marks, and the goodwill associated therewith.

17     105.  These infringing acts have occurred within California and in interstate

18 commerce and have caused, and unless restrained by this Court will continue to

19 cause, serious and irreparable injury to CISCO, for which CISCO has no adequate

20 remedy at law.

21     106.  CISCO is entitled to statutory damages, as provided by 15 U.S.C. §

22 1117(c).

23                    **EIGHTH CAUSE OF ACTION**
                    **(Unfair Competition**
24                  **15 U.S.C. § 1125(a)(1)(A))**

25     107.  CISCO incorporates the preceding paragraphs of this Complaint as if

26 fully set forth herein.

27

28

108.  DEFENDANTS did without authorization make false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which were and are likely to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection, or association of DEFENDANTS with CISCO, and/or as to the origin, sponsorship, or approval of the DEFENDANTS' goods or services, or commercial activities.

109.  CISCO alleges on information and belief that DEFENDANTS' acts have been committed with knowledge of CISCO's exclusive common law rights and goodwill in the Cisco Marks, as well as with bad faith and the intent to cause confusion, mistake and/or to deceive.

110.  CISCO has suffered, and, if the DEFENDANTS are not enjoined from its wrongful acts of passing off and acts of making false designations or origin, false or misleading descriptions of fact, and false or misleading representations of fact as described herein, will continue to suffer, great and irreparable injury, loss, and damages to its rights in and to the Cisco Marks and the goodwill associated therewith for which it has no adequate remedy at law.

111.  As a result of the DEFENDANTS' wrongful acts, CISCO has suffered and will continue to suffer loss of income, profits, and valuable business opportunities, and, if not restrained, DEFENDANTS will have unfairly derived and will continue to unfairly derive income, profits and business opportunities as a result of its wrongful acts.

112.  As the acts alleged herein violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and as CISCO has no adequate remedy at law, CISCO is entitled to injunctive relief as well as monetary damages, and other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, including treble damages, a reasonable attorney's fee and prejudgment interest, and/or statutory damages provided by 15 U.S.C. § 1125.

## NINTH CAUSE OF ACTION

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**(California Common Law Unfair Competition and Trademark Infringement)**

113.  CISCO incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

114.  DEFENDANTS' use of the Cisco Marks in connection with the marketing and sale of counterfeit and unauthorized Cisco products is likely to cause confusion, mistake, and deception as to whether these products are approved of, sponsored by, or somehow affiliated with CISCO.

115.  DEFENDANTS' actions constitute common law unfair competition and trademark infringement and have caused CISCO damages in an amount to be determined at trial.

116.  DEFENDANTS' actions have caused and, unless restrained by this Court, will continue to cause irreparable injury to CISCO.

117.  CISCO has no adequate remedy at law for DEFENDANTS' unfair competition and trademark infringement.

118.  DEFENDANTS' willful acts of common law trademark infringement constitute fraud, oppression, and malice.  Accordingly, CISCO is entitled to exemplary damages pursuant to California Civil Code § 3294(a).

## PRAYER FOR RELIEF

WHEREFORE, CISCO prays for judgment against the DEFENDANTS as follows:

A.      That the Court find that DEFENDANTS directly infringed and counterfeited the Cisco Marks, and engaged in unfair competition through use of their counterfeit and/or infringing marks;

B.      That the Court find that DEFENDANTS' trademark infringement and counterfeiting were knowing and willful and committed with bad faith and intent to deceive;

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

C.    That the Court find this case is exceptional under 15 U.S.C. § 1117(a);

D.    That the Court issue a preliminary and permanent injunction enjoining DEFENDANTS, their successors, officers, agents and employees, and anyone acting in concert with or at the behest or direction of them, from engaging in fraud schemes to obtain property from CISCO, including making false representations in order to receive replacement parts pursuant to CISCO's SMARTnet program.

E.    That the Court issue a preliminary and permanent injunction enjoining defendant and its agents, servants, employees, and attorneys and those persons in active concert or participation with them:

a.    From using any of CISCO's Trademarks or any mark similar thereto in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

b.    From using any logo, trade name or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Defendants or of third parties are sponsored by, authorized by, or in any way associated with CISCO;

c.    From infringing CISCO's registered trademarks;

d.    From otherwise unfairly competing with CISCO;

e.    From falsely representing itself as being connected with CISCO or sponsored by or associated with CISCO or engaging in any act which is likely to falsely cause the trade, retailers and/or members of the purchasing public to believe that Defendants are associated with CISCO;

f.    From using any reproduction, counterfeit, copy, or colorable imitation of CISCO's Trademarks in connection with the publicity, promotion, sale or advertising of goods sold by Defendants including,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   without limitation, computer hardware, software, switches, routers,

2   electronics, telecommunications, or other communications equipment

3   bearing a copy or colorable imitation of CISCO's trademarks; and;

4   g.      From affixing, applying, annexing, or using in connection with

5   the sale of any goods, a false description or representation, including

6   words or other symbols tending to falsely describe or represent such

7   goods as being those of CISCO and from offering such goods in

8   commerce;

9   F.      That CISCO be awarded compensatory damages in an amount to be

10  determined at trial;

11  G.      That CISCO be awarded consequential damages in an amount to be

12  determined at trial;

13  H.      That CISCO be awarded punitive and exemplary damages in an amount

14  to be determined at trial;

15  I.      That CISCO be awarded statutory damages;

16  J.      That CISCO be awarded treble damages;

17  K.      That CISCO be awarded pre-judgment interest;

18  L.      That CISCO be awarded its costs incurred in this action, including any

19  attorneys' fees to which CISCO may be entitled;

20  M.      That DEFENDANTS be required to restore all money and property

21  which have been acquired by means of unfair competition and trademark

22  infringement.

23  N.      That DEFENDANTS be required to account for all profits and damages

24  resulting from DEFENDANTS' respective infringing activities and that the award to

25  CISCO be increased as provided for under 15 U.S.C. § 1117; and

26  O.      That CISCO be granted such other and further relief as the Court deems

27  just and proper.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

2  DATED: April 22, 2014          Respectfully submitted,

3                                 SIDEMAN & BANCROFT LLP

4

5

6                                 By: _____/s/Jeffrey C. Hallam_____

7                                      Jeffrey C. Hallam
                                       Attorneys for CISCO SYSTEMS, INC. and
8                                      CISCO TECHNOLOGY, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

## **JURY DEMAND**

2       Pursuant to Civ. L.R. 38-1 and Fed. R. Civ. Proc. 38, Plaintiffs CISCO

3 SYSTEMS, INC. and CISCO TECHNOLOGY, INC. hereby demand trial by a jury

4 on all issues herein so triable.

5

6 DATED: April 22, 2014          Respectfully submitted,

7                             SIDEMAN & BANCROFT LLP

8

9

10                         By:      /s/Jeffrey C. Hallam

11                               Jeffrey C. Hallam

                                 Attorneys for CISCO SYSTEMS, INC. and

12                               CISCO TECHNOLOGY, INC.

2835-151\2064381v1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28